DESERT LIVESTOCK COMPANY, a corporation, and Anschutz Land And Livestock Company, Inc., a corporation, Plaintiffs and Appellants,

v.

UTAH POWER & LIGHT COMPANY, a Public Utility Corporation, Defendant and Respondent.

No. 14008.

Supreme Court of Utah.

Oct. 30, 1975.

---

Richard L. Bird, Jr., of Richards, Bird & Kump, David A. Robinson, Salt Lake City, for plaintiffs-appellants.

S. G. Baucom, Robert Gordon, Salt Lake City, for defendant-respondent.

HENRIOD, Chief Justice:

Appeal from an order dismissing plaintiff's cause of action. Affirmed, with costs to defendant.

Plaintiffs were individual, unassociated ranchers and customers of defendant, along with 65 others, in a remote area of Tooele County, Utah. Defendant delivered electric power to both at a specified point, where each of plaintiffs accepted such power into its own individual transmission and equipment system, that was employed for irrigation and other purposes, under an agreement which incorporated certain Public Service Commission Regulations.

Regulation 18 provides that the Power Company will furnish continuous services but "does no guarantee it against irregularities and interruptions." Regulation 22 provides that the customer "assumes all responsibility *on Customer's side of point of Delivery* for service supplied or taken, as well as for the electrical installation and appliances used in connection therewith," indemnifying and saving the Company harmless from all claims, etc. for injury to person or property resulting from the transmission or use of the power on that side.

On about the 18th–20th of June, 1970, Deseret's manager found one of its irrigation pumps not operating. He called a repairman, who came the same day, but the manager did not notify the defendant of the difficulty. At that time three other pumps were operating. The repairman said the "damage to the pump was caused by a sustained outage followed by a phase reversal (switch in lines) which had to be caused and corrected by man."

At about the same time in June, 1970, the foreman of plaintiff, Anschutz, called the latter's manager and reported a similar failure, because of phase reversal, of a similar pump, which occurred five days before, that was repaired, for which repair an invoice amount dated August 4, 1970, duly was paid in September, 1970, by plaintiff. There was another pump on the ranch

that was not damaged. A witness for the plaintiff said such a reversal would have to take place above the ranch and "toward the sub-station or generating plant."

It was not until February 11, 1971, more than seven months after the pump failures, that plaintiff's attorney finally notified defendant of the damages claimed by his clients, which, to his knowledge, was the first notification given.

At the time of and after the pump failures, no complaint was lodged with or reported to defendant by any of the numerous other customers. The plaintiffs suggested such circumstances might be reconciled by the fact that the damage may have occurred at night when the customers were asleep, —but at least no *damage* was reported.

At the close of plaintiff's case the defendant moved for a dismissal, which was taken under advisement.

■ At that time the trial judge told defendants' counsel, "You can stop now or you can proceed without waiving your motion." Counsel proceeded, introduced his evidence, and rested his case, at which time the court granted the motion to dismiss and entered a memorandum order to that effect. Upon objection by plaintiffs that he had not entered findings of fact and conclusions, he did so without further adieu. Having done all this, particularly in withholding action on the motion to dismiss, we believe the judge was not only justified procedurally in granting the motion under Rule 41(b), Utah Rules of Civil Procedure, but exercised a discretion reserved to himself irrespective of such rule. All of which leads us to conclude that plaintiffs' Points I and II on appeal, having to do with plaintiffs' urgence that the trial court was required to look solely to plaintiffs' evidence in acting on the motion, is without merit.[1]

■ Plaintiffs contend that Finding No. 14, having to do with canvassing evidence that the power company had no record of complaint, was erroneous. We do not agree with such contention since it assumes something might have been in the record which was not there, upon which we cannot speculate. We think the evidence *in* the record amply supports the court's finding.

■ As to Point IV, which urges that the doctrine of res ipsa loquitur applies, such contention is not borne out in the brief by anything said in plaintiffs' statement of facts, or by the record. Plaintiffs suggest a theory and conclusion in their argument that are not only gratuitous, but unwarranted in the evidence and not consonant with the interdictions of Regulations 18 and 22 incorporated in their agreement, —all of which seems to wash out any suggested application of that doctrine here. We believe and conclude that our pronouncements in *Loos v. Mtn. Fuel Supply*[2] and *Wightman v. Mtn. Fuel Supply*[3] to be dispositive here.

As to Points V, VI, and VII, having to do with breach of 1) express, and 2) implied warranties, and 3) the courts' comment on the damages, respectively: The claims that defendant furnished defective electric power is speculative and devoid of any proof whatever, and this court having affirmed the trial court's judgment of non-liability, the matter of comment about the damages by the court needs no comment here.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.

1. *Charles v. Judge*, 263 F.2d 864 (1959) only case cited for such contention, does not stand for it at all,—which see.

2. 99 Utah 496, 108 P.2d 254 (1940).

3. 5 Utah 2d 373, 302 P.2d 471 (1956).